**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| CATHERINE SPOON, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>JOBBLE, INC.<br><br>      Defendant. | No. 3:26-cv-01707-K<br><br>FIRST AMENDED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**<u>CLASS ACTION COMPLAINT</u>**

1. Catherine Spoon ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Jobble, Inc. ("Jobble" or "Defendant").

2. This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. This case is also brought pursuant to the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act").

4. Defendant uses unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

5. Now, Plaintiff brings this class action on behalf of herself, and all others harassed by Defendant and its unlawful telemarketing tactics.

1

**PARTIES**

6. Plaintiff, Catherine Spoon, is a natural person and a citizen of Texas in this District.

7. Defendant, Jobble, Inc. is a corporation that made calls into Texas.

**JURISDICTION AND VENUE**

8. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the TCPA, 47 U.S.C. § 227.

9. This Court has personal jurisdiction over Defendant because it directed telemarketing calls to Texas which establishes sufficient minimum contacts for claims arising from those telemarketing calls.

10. Thus, Defendant knew, or should have known, that it was directing telephone solicitations into Texas.

11. At all times relevant to this action, Plaintiff maintained and used the telephone number at issue in this litigation to her address in Dallas, Texas.

12. Defendant transmitted the telemarketing text messages at issue to Plaintiff's cellular telephone while Plaintiff was physically present at her address in Dallas, Texas.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred at her address in Dallas, Texas., including Defendant's transmission of the text messages to Plaintiff while Plaintiff was located to her address in Dallas, Texas.

14. This Court has supplemental jurisdiction over Plaintiff's Texas law claim pursuant to 28 U.S.C. § 1367 because the claim forms part of the same case or controversy as Plaintiff's federal TCPA claims.

**BACKGROUND**

*The Telephone Consumer Protection Act*

15.    Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

16.    "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

17.    As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

18.    The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

19.    For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

20.     Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

21.     The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

22.     The Supreme Court is clear that text messages are "calls" under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

23.     The TCPA prohibits the use of artificial or prerecorded voices when calling cellular telephone numbers. 47 U.S.C. § 227(b)(1)(A)(iii).

24.     The TCPA prohibits the use of artificial or prerecorded voices when calling residential telephone numbers. 47 U.S.C. § 227(b)(1)(B).

25.     The TCPA prohibits calling any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. §§ 64.1200(c)(2). Notably, "[s]uch do-not-call registrations must be honored indefinitely[.]" *Id*.

26.     For such violations, the TCPA provides a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5).

***The Texas Telephone Solicitation Act***

23.     The Texas Legislature enacted the Texas Telephone Solicitation Act, Tex. Bus. & Com. Code § 305.001 et seq. (the "Texas Act"), to protect Texas residents from intrusive and unwanted telemarketing communications.

24.     Like its federal counterpart, the Texas Act was enacted to safeguard the privacy rights of individuals and to prevent the nuisance, invasion of privacy, and disruption caused by unsolicited telemarketing communications.

25.     The Texas Act regulates "telephone solicitations," which are defined as telephone calls or messages initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

26.     The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has made a prior express request to receive the communication or has otherwise provided prior express consent. Tex. Bus. & Com. Code § 305.053.

27.     An "automatic dialing announcing device" includes equipment that stores or produces telephone numbers to be called and automatically dials those numbers and plays a recorded or automated message.

28.     Telemarketing text messages sent using automated systems constitute "telephone solicitations" under the Texas Act when they are sent for the purpose of encouraging the purchase of goods or services.

29.     The Texas Act also provides that "[a] person who receives a communication that violates 47 U.S.C. Section 227 [the TCPA], a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication." Tex. Bus. & Com. Code § 305.053(a).

30.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]"

31.     47 C.F.R. § 64.1200(e) further provides that the TCPA's do-not-call regulations apply to "any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

32.     The Texas Act therefore authorizes a private right of action against persons who initiate telemarketing text messages in violation of the TCPA's implementing regulations, including violations of 47 C.F.R. § 64.1200(c).

33.     Under the Texas Act, a prevailing plaintiff may recover statutory damages of $500 per violation, and up to $1,500 per violation for knowing or intentional conduct. Tex. Bus. & Com. Code § 305.053.

34.     The Texas Act also authorizes injunctive relief to prevent further unlawful telephone solicitations.

***Plaintiff Catherine Spoon and Defendant's Text Message Contact***

35.     Plaintiff is an individual and a "person" under the meaning of 47 U.S.C. § 153(39).

36.     Plaintiff's cellular telephone number is 214-727-XXXX (the "telephone number").

37.     To avoid unsolicited telemarketing calls, the number has been on the National Do-Not-Call Registry since March 19, 2026.

38.     Plaintiff uses her telephone number for personal, residential, and household purposes (such as calling friends, family, and scheduling personal appointments).

39.     During this time period, Plaintiff has been the sole remunerator (i.e., payer) for any bills arising from his telephone number.

40. Plaintiff has never received a reimbursement from any business for her telephone number.

41. Plaintiff has never taken a business-related tax-deduction for her telephone number.

42. The Plaintiff does not have a landline telephone.

43. As explained below, Defendant violated the TCPA numerous times.

44. Plaintiff received texts from Defendant starting in April of 2026.

45. On or about April 19, 2026, Plaintiff received a text message from (888) 906-1305 stating that Jobble had "ran our comparison tool for your Chevrolet" and that a rate "may be worth comparing," accompanied by a trackable link and an instruction to reply STOP to opt out.

46. On April 20, 2026, at approximately 9:15 AM, Plaintiff received a text message from the same number stating that a "quote for your Chevrolet Silverado 1500 is ready," with a link to view the offer and an instruction to reply STOP to opt out.

47. Later on April 20, 2026, Plaintiff received an additional text message from the same number stating "This auto rate for your Chevrolet might surprise you. View offer," again accompanied by a trackable link and STOP opt-out instruction.

48. On April 20, 2026, at approximately 11:47 AM, Plaintiff received another text message from the same number stating "Your best auto rate is here. Take 30 seconds to see if it beats what you're paying," with a link and STOP opt-out instruction.

49. On April 21, 2026, at approximately 12:00 PM, Plaintiff received a text message from the same number stating "With rates changing, you could be overpaying for your Chevrolet. Check this one," with a link and STOP opt-out instruction.

50. On April 24, 2026, at approximately 1:39 PM, Plaintiff received a text message from the same number stating "We pulled a new quote for your Chevrolet. Compare it to Other,"

with a link and STOP opt-out instruction. Two additional messages were received on or around the same date soliciting a comparison of Chevrolet auto insurance rates.

51.    Pictures of the text messages are below:









52. Every text message at issue began with the word **"Jobble:"** immediately preceding the message body. The first message stated, "Jobble: You're subscribed to recurring texts on insurance quotes, savings & offers." Every subsequent message likewise began with "Jobble:" and advertised insurance quotes, rates, savings, or offers for Plaintiff's Chevrolet Silverado 1500. At no point did any message identify any entity other than Jobble as the sender.

53. The messages repeatedly represented that **Jobble** had already "ran our comparison tool," had prepared insurance quotes for Plaintiff's vehicle, had obtained new rates for Plaintiff, and invited Plaintiff to click individualized hyperlinks to review those quotes. The messages therefore represented to Plaintiff that the sender was Jobble and that the promoted insurance comparison services were Jobble's services.

54. Plaintiff is not aware of any other entity using the Jobble name in connection with automobile insurance comparison services. Nothing in any of the text messages suggested that any person or entity other than Defendant originated or authorized the campaign. Based upon the repeated identification of "Jobble" as the sender, the uniform content of the messages, and the promotion of Jobble's services, Plaintiff reasonably understood the messages to have originated from Defendant.

55. Each of the above text messages was sent from (888) 906-1305, identified in Plaintiff's phone as an SMS/MMS number. The first message in the thread informed Plaintiff that she was "subscribed to recurring texts on insurance quotes, savings & offers," and instructed her to reply STOP to opt out or HELP for assistance — standard disclosures used by automated text marketing platforms.

56. Each message was directed at encouraging Plaintiff to purchase auto insurance by clicking a trackable link to view a quoted rate for her specific vehicle — a Chevrolet Silverado

13

1500. The messages were promotional in content and commercial in purpose, constituting telephone solicitations within the meaning of the TCPA, 47 C.F.R. § 64.1200(c), and the Texas Act.

57. The messages were sent in rapid succession across multiple days, from the same number, using standardized language and format, with rotating trackable links unique to each transmission. This pattern is consistent with automated bulk messaging systems that generate individualized links for each recipient while delivering mass promotional content without human intervention at the time of transmission.

58. Plaintiff alleges that Defendant is directly liable for the text messages described herein because the messages expressly identify Jobble as their sender, advertise Defendant's services, and were transmitted as part of Defendant's recurring text-message marketing campaign.

59. Accordingly, the text messages sent to Plaintiff were sent for the purpose of encouraging the purchase of goods or services and constitute telemarketing within the meaning of the TCPA.

60. The statement in Defendant's first text message that Plaintiff had been "subscribed to recurring texts" was false. Plaintiff had never enrolled in Defendant's recurring text messaging program, never requested recurring insurance quote messages from Defendant, and never authorized Defendant to subscribe her to any recurring SMS marketing campaign.

61. At no time before receiving the text messages described herein did Plaintiff provide Defendant with her prior express invitation or permission to send her telemarketing text messages.

62. Plaintiff never requested that Defendant send her recurring marketing text messages regarding automobile insurance quotes, savings, offers, or other promotional content.

14

63.    Plaintiff did not enroll in, subscribe to, or otherwise agree to receive recurring marketing text messages from Defendant.

64.    Plaintiff had no established business relationship with Defendant.

65.    Each of Defendant's text messages encouraged Plaintiff to purchase insurance products by repeatedly advertising available insurance quotes, rates, savings, and offers, urging Plaintiff to compare available insurance products, and directing Plaintiff to click hyperlinks to obtain those offers.

66.    The purpose of the text messages was to induce Plaintiff to purchase insurance products or services through Defendant's insurance comparison platform.

67.    The text messages therefore constituted "telephone solicitations" because they were initiated for the purpose of encouraging the purchase of goods or services.

68.    Plaintiff had never purchased goods or services from Defendant, never requested an insurance quote from Defendant, never maintained an account with Defendant, and never otherwise engaged in any business transaction with Defendant.

69.    Defendant sent the above-described text messages using equipment that had the capacity to store or produce telephone numbers to be called and to automatically send text messages to those numbers without human intervention.

70.    The text messages received by Plaintiff were uniform in format and content and were part of mass promotional campaigns offering discounts, sales, and limited-time promotions for Defendant's services.

71.    The messages were impersonal and generic in nature, containing standardized promotional language.

15

72.    The text messages were sent from a single number which means they were likely sent from a dedicated messaging platform commonly used for automated marketing campaigns.

73.    The volume, frequency, and timing of the messages demonstrate that the messages were sent automatically rather than manually by an individual employee.

74.    Defendant's system was capable of storing lists of consumer telephone numbers and sending identical promotional messages simultaneously or in rapid succession to numerous recipients.

75.    The messages were sent without any human intervention at the time each message was transmitted.

76.    Such equipment constitutes an "automatic dialing announcing device" as defined by Tex. Bus. & Com. Code § 305.001 and prohibited by § 305.053 when used without prior express consent.

## CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of the following:

> **National Do Not Call Registry Class:** All persons within the United States: (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant; (3) within a 12-month period; and (4) within the four years prior to the filing of the Complaint.

> **Texas Telephone Solicitation Class:** All persons within the State of Texas: (1) received one or more marketing text messages from Defendant; (2) using the same or similar dialing equipment used to contact the Plaintiff or (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least 31 days; (4) within the four years prior to the filing of the Complaint.

78.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

79.    Plaintiff reserves the right to amend the class definition.

80.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

81.    **Ascertainability**. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. Specifically, all members of the proposed Class can be ascertained through analysis of Defendant's phone records.

82.    **Numerosity**. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least several thousand members. After all, telemarketing campaigns necessarily involve communication with large groups of people.

83.    **Typicality**. Plaintiff's claims are typical of those of Class Members because all such claims arise from Defendant's unlawful telemarking practices.

84.    **Adequacy**. Plaintiff will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiff's counsel has substantial experience in complex class action litigation and an expertise in TCPA litigation.

85.    **Commonality and Predominance**. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting

individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer, *inter alia*:

1. whether Defendant violated the TCPA;

2. whether Defendant violated the TCPA willfully and knowingly;

3. whether Plaintiff is entitled to statutory damages;

4. whether Plaintiff is entitled to treble damages;

5. whether Defendant should be enjoined from further TCPA violations.

86. **Superiority**. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

87. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

88.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

89.     Defendant's violations were negligent, willful, or knowing.

90.     As a result of Defendant's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

91.     Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from sending telemarketing calls, including calls, to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION
**Violation of the Texas Telephone Solicitation Act**
**(Tex. Bus. & Com. Code § 305.001 et seq.)**

92.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

93.     The Texas Act prohibits a person from making a telephone solicitation using an automatic dialing announcing device unless the recipient has provided prior express consent. Tex. Bus. & Com. Code § 305.053.

94.     The Texas Act defines "telephone solicitation" as a telephone call or message that is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services. Tex. Bus. & Com. Code § 305.001.

95.     Text messages that promote goods or services constitute "telephone solicitations" under the Texas Act.

96.     At all relevant times, Plaintiff was a resident of Texas and received Defendant's telemarketing text messages in Texas.

97.     Defendant's text messages were sent using an automatic dialing system or similar automated technology that qualifies as an automatic dialing announcing device under the Texas Act.

98.     The Texas Act also provides that "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication." Tex. Bus. & Com. Code § 305.053(a).

99.     Defendant violated regulations adopted under 47 U.S.C. § 227.

100.    Specifically, Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to Plaintiff and members of the Texas Do Not Call Registry Class despite their telephone numbers being listed on the National Do Not Call Registry.

101.    Plaintiff and members of the Texas Do Not Call Registry Class received more than one telemarketing text message from Defendant within a twelve-month period.

102.    Defendant's conduct constitutes multiple violations of Tex. Bus. & Com. Code § 305.053.

103.    The Texas Act provides a private right of action for a person who receives a communication in violation of the statute.

104.    As a result of Defendant's violations of the Texas Act, Plaintiff is entitled to recover statutory damages of $500 per violation and attorneys fees.

105.    If the Court finds that Defendant knowingly or intentionally violated the Texas Act, Plaintiff is entitled to recover additional damages as permitted by statute.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.      Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.      Injunctive relief prohibiting Defendant from sending calls soliciting the purchase of its goods or services, except for emergency purposes, to anyone who asked Defendant to stop;

C.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

D.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes; and

E.      Such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.


RESPECTFULLY SUBMITTED AND DATED this 29th day of July, 2026.


>/s/ *Anthony Paronich*
>Anthony Paronich
>**PARONICH LAW, P.C.**
>350 Lincoln St., Suite 2400
>Hingham, MA 02043
>Telephone: (617) 485-0018
>anthony@paronichlaw.com


>/s/ *Sharon K. Campbell*
>Sharon K. Campbell
>State Bar # 03717600
>6220 Campbell Rd, Suite 300
>Dallas, Texas 75248
>Telephone: 214/351-3260
>Sharon@SharonKCampbell.com
>*Attorneys for Plaintiff*

22